IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALAN M. ULERY,                                    3:12-cv-00064 RE

             Plaintiff,                        **OPINION AND ORDER**

      v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

            Defendant.

**REDDEN**, Judge:

Plaintiff Alan Ulery ("Ulery") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his claim for supplemental security income benefits ("SSI"). For the reasons set forth below, the

decision of the Commissioner is affirmed and this matter is dismissed .

/ / /

1 - OPINION AND ORDER

## BACKGROUND

Ulery filed his application for SSI on August 21, 2006, alleging disability since June 8, 2006, due to injuries sustained after he was struck by a train, including "can't lift much any more, can't walk without assistance, can't remember things always, have back spasms." Tr. 143. Ulery was 26 years old on his alleged onset date. His application was denied initially and upon reconsideration. A hearing was held on October 1, 2009. The Administrative Law Judge ("ALJ") found him not disabled. Ulery's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Ulery had the medically determinable severe impairments of polysubstance abuse, borderline intellectual functioning, depression, status post spinous process fracture in the cervical spine, status post right ankle open dislocation, and status post scapula fracture. Tr. 12.

The ALJ found that Ulery's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 13.

The ALJ determined that Ulery retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work, lift no more than ten pounds, sit for approximately six hours in an eight hour day, and walk and stand for about two hours in an eight hour day. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally climb ladders, stairs, ramps, and scaffolds. He can occasionally reach overhead with the upper extremities. "Due to the claimant's substance abuse, he cannot maintain work activity on a regular and continuous basis for a 5-day, 40-hour work week." Tr. 14.

The ALJ found Ulery could not perform his past relevant work. Tr. 18.

The ALJ found that, based on the above RFC, "there are no jobs that exist in significant numbers in the national economy that the claimant can perform...." *Id.* However, the ALJ found Ulery's substance abuse was material and "his most limiting impairment regarding the ability to maintain consistent employment." Tr. 17. The ALJ found that, without the effect of drug and alcohol abuse, Ulery would retain the ability to perform:

> less than a full range of sedentary work....He could lift no more than
> 10 pounds, sit for approximately 6 hours in an 8 hour day, and walk
> and stand for about 2 hours in an 8 hour day. He could occasionally
> balance, stoop, kneel, crouch, and crawl. He could occasionally
> climb ladders, stairs, ramps, and scaffolds. He could occasionally
> reach overhead with the upper extremities. He can work in a slow
> paced job and could perform 1-3 step simple, repetitive tasks.

Tr. 20.

Based on the testimony of the vocational witness, the ALJ found Ulery would be able to perform work as a cashier, new charge clerk, or extruder machine operator, and was therefore not disabled. Tr. 23.

Ulery argues that the ALJ erred by: (1) failing to find Fetal Alcohol Syndrome a severe impairment at step two; (2) improperly weighing the medical record; and (3) improperly relying on the vocational evidence.

## DISCUSSION

### I. Fetal Alcohol Syndrome

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two

severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

Ulery contends the ALJ erred by failing to find fetal alcohol syndrome a severe impairment at step two. He argues the ALJ erred by failing to include functional limitations arising from fetal alcohol system including Impulse Control Disorder and borderline intellectual functioning. As set out above, the ALJ specifically found the plaintiff had the severe impairment of borderline intellectual functioning. Tr. 12.

The ALJ found that fetal alcohol syndrome was not a medically determinable impairment because the record "does not contain a diagnosis of fetal alcohol syndrome from an acceptable medical source based on objective findings." Tr. 13. The evidence indicates Ulery reported a history of fetal alcohol syndrome to doctors, but not that it was shown by objective testing. Tr. 251, 263, 435, 500, 508, 601.

4 - OPINION AND ORDER

As to Impulse Control Disorder, it is listed as a diagnosis in a discharge summary dated August 3, 2006. Tr. 251.   All remaining references to Impulse Control Disorder note the diagnosis is "by history." Tr. 251, 263, 298, 435, 437, 439, 573.  The diagnosis does not appear after October 2007.  The ALJ did not err by finding Impulse Control Disorder not severe.

Ulery points to the opinion of David Sweet, Ph.D., who reported the "results of the evaluation could support the diagnosis of Fetal Alcohol Syndrome." Tr. 588.  However, Dr. Sweet wrote his Axis III diagnostic impression of Ulery as "reports numerous physical problems from train accident, fetal alcohol syndrome by report." Tr. 587.

The ALJ did not err by failing to find fetal alcohol syndrome a severe impairment at step two.

## II.  Drug and Alcohol Abuse

The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. §§ 423(d)(2)(C); 1382c(a)(3)(J) , 20 C.F.R. § 416.935.  An ALJ must conduct a drug and alcoholism analysis ("DAA analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol.  20 C.F.R. § 404.1535(b).  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied.  *Id., Parra v. Astrue,* 481 F.3d 742, 745 (9th Cir. 2007).  The claimant bears the burden of proving his substance abuse is not a material contributing factor to his disability.  *Id.*

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also

give greater weight to the opinion of an examining physician over that of a reviewing physician.

*Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate

reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject

physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ wrote:

> As for the opinion evidence, the undersigned gives significant weight
> to the medical opinions of the consultative examiners Leslie Pitchford,
> PhD, and David Sweet, PhD. Both psychologists examined the claimant
> and concluded that the claimant's substance abuse was his most
> limiting impairment regarding the ability to maintain consistent
> employment.

Tr. 17.

Plaintiff contends that neither psychologist found Ulery's substance abuse " his most

limiting impairment" for maintaining employment.

## A. Leslie Pitchford, Ph.D.

On November 17, 2006, Dr. Pitchford conducted a psychological examination of Ulery.

Tr. 493-96. Mini Mental Status Examination scores suggested mild to moderate cognitive

impairment. Tr. 495. Test results indicated borderline intellectual function, and moderate

depression. *Id.* Dr. Pitchford wrote:

> Alan is reporting multiple symptoms associated with a depressive
> disorder. It does not appear that his depressive symptoms have
> significantly interfered with his ability to carry out activities of
> daily living. That said, Alan currently appears to be struggling
> with a mild depressive disorder. He would benefit from a psy-
> chiatric evaluation and counseling.

6 - OPINION AND ORDER

> Alan reported frequent use of marijuana and alcohol prior to his
> 6/2006 accident.  His history is consistent with alcohol and
> cannabis abuse.
>
> There is a possibility that Alan may have a cognitive disorder,
> due to his reported history of fetal alcohol syndrome and/or
> injuries sustained in the train accident.  However a neuropsy-
> chological evaluation will need to be completed to confirm any
> neuropsychological impairment.

Tr. 495.

Dr. Pitchford recorded the Diagnostic Impression of Major Depressive Disorder,

Recurrent, Mild; Alcohol Abuse, early full remission (per self-report); Cannabis abuse, early full

remission (per self report) Amphetamine Abuse, sustained full remission (per self-report) and

R/O Cognitive Disorder, NOS.  She assessed a GAF of 55, and stated:

> Alan appears to be struggling with a mild depressive disorder.
> However, it does not appear that depression alone would interfere
> with Alan's ability to maintain employment.  On the other hand,
> Alan's history of substance/alcohol abuse may pose a barrier to
> obtaining/maintaining employment.  Although Alan has reportedly
> abstained from using any substances since being injured (6/06), he
> is at risk of relapse.

Tr. 496.

On January 18, 2007, Dr. Pitchford evaluated Ulery again.  Tr. 504-09.  Ulery reported he

had not used any alcohol or other substances since the accident.  He had an apartment and was

independent in his basic self-care.  Tr. 506.  No problems were noted with attention or

concentration, although plaintiff stated "he can not usually follow a movie from beginning to end

until he has seen it a few times."  Tr. 507.  Intelligence test scores were 7th percentile verbal, 9th

percentile performance, and 6th percentile full scale IQ, all in the borderline and low average

range.  Dr. Pitchford stated the "following diagnoses are considered:

> *Poly-substance Dependence.* Alan indicated that he has been substance free since his accident but acknowledged in [sic] extensive history of substance dependence prior to that time.
>
> *Cognitive Disorder NOS.* Based on Alan's history there is likelihood that his cognitive limitations are continuous with his history of learning problems going back to his school years. However, Alan has noticed increased problems with his memory and concentration since he was injured.
>
> *Depressive Disorder.* At this time Alan's symptom picture is best described by a diagnosis of depressive disorder NOS.
>
> *Borderline Intellectual Functioning.* Alan's history, current a-daptation and test results are consistent with this diagnosis.
>
> *Personality Disorder.* There remains some possibility of a person-ality disorder but at this time a diagnosis is not confirmed.
>
> *Fetal Alcohol Syndrome.* Alan reported that he was diagnosed with fetal alcohol syndrome as a child and that he required special services in school. Although he did not show the physical charac-teristics sometimes associated with this disorder the diagnosis is likely based on Alan's history.

Tr. 508.

Dr. Pitchford made Axis I diagnoses of Poly-substance Dependence/Abuse, in full remission 8 months per self-report; Cognitive Disorder NOS, mild deficits; Depressive Disorder NOS, and Borderline Intellectual Functioning. *Id.* She assessed a GAF of 55, and stated "[i]ndividuals with Alan's level of capability usually have difficulty maintaining competitive employment or following long-term life plans. His ability to sustain work will be further impacted by any physical limitations he may have." Tr. 509.

Plaintiff argues that in her second assessment Dr. Pitchford does not list substance abuse as a factor affecting employability, and the ALJ could not reasonably conclude Dr. Pitchford

opined substance abuse was "the most limiting impairment" to employment. Plaintiff contends, if read in context, Dr. Pitchford's second opinion is that the plaintiff's cognitive disorder, depressive disorder, and borderline intellectual functioning are the major limitations to employment.

The ALJ' reasonably concluded Dr. Pitchford's opinion supported a finding that plaintiff's substance abuse was material to his disability. This is particularly true given the additional medical evidence set out below.

## B. David Sweet, Ph.D.

On August 22, 2009, Dr. Sweet conducted a Psychodiagnostic Examination of plaintiff. Tr. 582-89. Ulery reported he had used a case and a half of beer and some vodka four days prior. Tr. 582. Ulery stated he last used marijuana a month ago. Tr. 583. He had been sober for 18 months after his accident.

Ulery denied depression. He lived with his mother and assisted with chores around the house. Dr. Sweet noted abstract reasoning was not within normal limits, Ulery's affect was flat and incongruent with statements he made about his mood, and he demonstrated deficits in attention and concentration. Tr. 587.

Dr. Sweet's diagnostic impression was: " Axis I Poly-Substance Dependence; Axis II Borderline Intellectual Functioning OR Mild Mental Retardation, Axis III Reports Numerous Physical Problems from Train Accident, Fetal Alcohol Syndrome by Report. Dr. Sweet noted severe psycho social stressors and assessed a GAF of 45. Tr. 587-88.

Dr. Sweet wrote "[t]he most significant problem under the Axis I diagnosis has to do with his long history of alcohol and drug use. He said he has lost virtually every job because of his

alcohol use. At this point, it would be highly unlikely that he could maintain competitive employment on a consistent basis if he can't stop drinking and using drugs. He has a very poor track record of maintaining employment in the past because of these very problems." Tr. 588.

The Multiaxial Evaluation Report format is one way for a clinician to list diagnoses. *Diagnostic and Statistical Manual of Mental Disorders,* DSM-IV (4th Ed.), p. 37 (2000). The principal diagnosis or reason for the visit should be listed first. *Id.* Axis I is for Clinical Disorders, Axis II is for Personality Disorders and Mental Retardation, Axis III is for General Medical Conditions, Axis IV is for psychosocial and environment issues, and Axis V is the Global Assessment of Functioning ("GAF") Scale.

The ALJ gave "significant weight" to Dr. Sweet's opinion. Tr. 17. Plaintiff appears to argue that there is some significance to Dr. Sweet's Axis I diagnosis, noting that "Dr. Sweet did not specifically address Axis II. Tr. 588. Dr. Pitchford deferred any diagnosis on Axis II. Tr. 495, 508." Plt's Brief at 10. However, Dr. Sweet's Axis II diagnosis is Borderline Intellectual Functioning or mild mental retardation. Tr. 587. Therefore Dr. Sweet's Axis I diagnosis of Poly-Substance Dependence supports the ALJ's determination that DAA is material to plaintiff's disability.

Ulery argues that the ALJ failed to include functional limitations arising from Dr. Sweet's determination that Ulery had limitations of attention and concentration. The ALJ adequately provided for these issues by limiting plaintiff to "1-3 step simple, repetitive tasks." Tr. 20. The ALJ's assessment of Dr. Sweet's opinion is supported by substantial evidence.

///

///

## C. John Cochran, Ph.D.

On November 29, 2009, Dr Cochran conducted a cognitive and psychological assessment. Tr. 592-605. Ulery reported that he was living with his parents having lost housing due to drug use. Tr. 594. Ulery reported Post-traumatic Stress Disorder ("PTSD"), severe migraine headaches, lower back, shoulder and foot pain. He reported anxiety and depression. Ulery admitted he was an alcoholic, and drank alcohol the night before the interview. Tr. 596.

Wechsler Adult Intelligence Scale testing indicated verbal comprehension skills in the Borderline range. Overall intellectual scores were Borderline. Tr. 597. On the Neurobehavioral Cognitive Status Examination Ulery did not show deficits in attention and concentration. Tr. 598. Immediate memory, intermediate verbal memory, immediate visual memory and intermediate construction design memory were in normal range. He did not show deficits in expressive and receptive language skills. Verbal and visual memory scores were in the normal range. Tr. 598-99. In addition, Dr. Cochran administered the Million Clinical Multiaxial Inventory-II. Tr. 600.

Dr. Cochran diagnosed Axis I: Alcohol Dependence; Cannabis Abuse; PTSD-chronic; Somatization Disorder; Generalized Anxiety Disorder; and Dysthymic Disorder. Dr. Cochran diagnosed an Axis II Personality Disorder NOS with avoidant, antisocial and passive aggressive features, and borderline intellectual functioning, and assessed a GAF of 50. Tr. 601.

The ALJ gave "some weight" to Dr. Cochran's opinion. Tr. 17. The ALJ noted that Dr. Cochran's opinion "is not consistent with the opinions of examining psychologists Pitchford and Sweet." *Id.* This is a specific and legitimate reason to reject Dr. Cochran's opinion. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2002). Ulery argues that the ALJ erred by failing to

11 - OPINION AND ORDER

identify "which parts of Dr. Cochran's opinion are not consistent with Drs. Pitchford and Sweet or with the overall medical record." Plt's Brief at 12.   However, the ALJ did note Dr. Cochran's opinion was not entirely consistent with his own objective findings.  The ALJ specifically cited the neurobehavioral cognitive status examination which showed no significant cognitive deficits in several areas including attention and concentration, memory and language comprehension.  Tr. 17.  This is inconsistent with Dr. Cochran's conclusion that Ulery suffered moderate impairment in his ability to remember locations and work-like procedures and moderately severe impairment in his ability to understand and remember detailed instructions.  Tr. 604.

The ALJ is the trier of fact, must "resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  The opinions and diagnoses conflict. The evidence could result in "more than one rational interpretation," and the ALJ's conclusion to grant more weight to Drs. Pitchford and Sweet than Dr. Cochran must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

The examining psychologists agree that the primary diagnosis is substance abuse.  Ulery has the burden of proving that his substance abuse is not material to his disability. *Parra,* 481 F.3d at 745.  The ALJ offered clear and convincing, and specific and legitimate, reasons to give Drs. Sweet and Pitchfords' opinions greater weight than Dr. Cochran's.

**III.  Step Five**

The ALJ found, because of substance abuse, Ulery "cannot maintain work activity on a regular and continuous basis for a 5-day, 40-hour work week." Tr. 14.  Ulery argues that the ALJ "has not provided any showing that Claimant's substance use on or after the alleged onset date is

12 - OPINION AND ORDER

of a same or similar degree." Plt's Brief at 23.  However, Ulery bears the burden of proof, not

the ALJ.

The ALJ posed a hypothetical to the Vocational Expert ("VE") which accounted for all of

Ulery's medically supported limitations. Tr. 86.  Two of the occupations identified by the VE

were inconsistent with the exertional level in the hypothetical.  However, because the VE

identified one occupation consistent with the hypothetical, charge clerk, any error in identifying

inconsistent occupations was harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1162 (9th Cir. 2008).

### CONCLUSION

For these reasons, the ALJ's decision that Ulery is not disabled  is based on correct legal

standards and supported by substantial evidence.   The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this ___day of April, 2013.

JAMES A. REDDEN
United States District Judge

13  - OPINION AND ORDER